IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MARILYN BROWN, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | Case No. 4:16-CV-01739-KOB |
| GADSDEN REG'L MED. CTR., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiffs Marilyn Brown and Aaron Grindstaff brought suit in Etowah County Circuit Court against Gadsden Regional Medical Center (GRMC); Triad Holdings V, LLC; Triad of Alabama, LLC; and Professional Account Services, Inc. (PAS), for breach of contract, conversion, and breach of fiduciary duty. Each count is paired with a conspiracy claim.

PAS removed the action to this court, and then all the Defendants jointly filed a motion to dismiss, or in the alternative, a motion for summary judgment on all claims. (Doc. 14). As discussed in this opinion, the court will grant the motion. Specifically, the court will dismiss the breach of express contract count because the Plaintiffs lack standing to enforce a contract to which they are not an intended party; dismiss the breach of implied contract and conversion counts for failure to state a med-pay claim; and will enter judgment for the Defendants on the breach of fiduciary duty count.

**I. BACKGROUND**

This case centers on two patients' claims that Gadsden Region Medical Center improperly placed liens on their automobile insurance med-pay benefits rather than seeking

1

payment from Blue Cross Blue Shield, their personal healthcare insurance provider.

Blue Cross and GRMC have a provider agreement in which the hospital agrees to submit bills of member patients directly to Blue Cross for reimbursement. The agreement says that the hospital should not file liens against Blue Cross members and that nothing in the contract is intended to confer a right, benefit, or cause of action on a third party, including a Blue Cross member.

On March 23, 2012, Marilyn Brown was injured in a car wreck and taken to GRMC for treatment. During the intake process, GRMC says it did not receive any indication Ms. Brown had private health insurance. Ms. Brown says she cannot remember if she told the hospital she was insured by Blue Cross. GRMC filed a hospital lien[1] against any claims, judgments, causes of action, or settlements received or entitled to be received by Ms. Brown for the costs of Ms. Brown's care.

In September 2012, Ms. Brown returned to GRMC for a pre-operation examination. At that time, Ms. Brown informed GRMC that she had private health insurance through Blue Cross, but that the other driver's auto insurance would cover her medical bills related to the accident. GRMC submitted her September surgery to Blue Cross, who paid the bill.

Ms. Brown's automobile insurer refused to issue a check solely to her for her med-pay benefits, instead insisting on issuing a two-party check including GRMC as a payee. Even though Ms. Brown told the insurer that GRMC had withdrawn the lien, the insurer still refused to issue a check payable only to Ms. Brown.

Ms. Brown filed suit in state court against the other driver in her accident, claiming that

---

[1] Under Ala. Code § 35-11-370 *et seq.*, hospitals automatically have a lien against all actions, claims, counterclaims, and demands accruing to the person to whom treatment is given for all reasonable charges associated with treatment that occurs within one week after a person is injured. The lien is perfected through a filing in probate court within ten days of treatment.

he was liable for her injuries. The other driver moved for two continuances prior to trial. First, he moved the court to continue the trial based on a settlement offer made to Ms. Brown. Ms. Brown opposed the motion, stating she would not accept a settlement for less than the policy's limit.

The defendant driver also requested a stay of the case prior to trial, arguing that the existence of GRMC's lien permitted Ms. Brown to argue inconsistent positions and permitted a potential double recovery. Ms. Brown opposed that motion, stating that GRMC had withdrawn the lien and so it would have no effect on the case. In October 2015, the case was tried by a jury, who returned a verdict finding the other driver not liable to Ms. Brown.

Similarly, on May 14, 2014, Aaron Grindstaff was injured in a car accident and treated at GRMC. Mr. Grindstatff had private health insurance through Blue Cross, and informed GRMC of that fact on his admission paperwork. Less than a month later, GRMC filed a hospital lien against Mr. Grindstaff, seeking payment from his car insurance med-pay.

When Mr. Grindstaff made a claim against his auto policy for the med-pay benefits, his auto insurer wrote a check payable to him and GRMC. Mr. Grindstaff's attorney informed his auto insurer that Blue Cross had already paid the GRMC bill and requested a check made payable only to Mr. Grindstaff. However, his auto insurer refused to do so.

## II.    STANDARD OF REVIEW

The Defendants argue the Plaintiffs lack standing to bring their claims, that the complaint fails to state a claim, and that they are entitled to summary judgment. Accordingly, three different legal standards are at issue: Federal Rules of Civil procedure 12(b)(1), 12(b)(6), and 56. The court will set out the standard for each in turn.

### A.    Motion to Dismiss Under Rule 12(b)(1)

The court, in addressing the issue of federal jurisdiction, must also consider the plaintiff's

standing to assert a cause of action, "because standing is an element of the constitutional requirement of 'case or controversy,' [and] lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)). To establish standing under Article III of the United States Constitution, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

### B. Motion to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id*. at 679.

### C. Motion for Summary Judgment Under Rule 56

When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not weigh the evidence and make credibility determinations because these decisions belong to a jury. *See id.* at 254.
4

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III. DISCUSSION

### A. Breach of Contract

#### 1. *Breach of Express Contract*

Ms. Brown and Mr. Grindstaff sued the Defendants for breach of the Provider Agreement between GRMC and Blue Cross. No one disputes that the Plaintiffs are not parties to that Agreement. Only if they are third party beneficiaries do they have standing to enforce that contract. Because Blue Cross members are not third-party beneficiaries of the Provider Agreement, the court will dismiss the Plaintiffs' claims because they lack standing to enforce the contract.

To be a third-party beneficiary of a contract, Alabama law requires "that the contracting parties intended, at the time the contract was created, to bestow a direct benefit" on the third-party. *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002) (internal quotations omitted). Generally, a court "examine[s] the contract documents as well as the surrounding circumstances in resolving the question of whether the parties intended to directly benefit a third party." *Fed. Mogul Corp. v. Universal Const. Co.*, 376 So. 2d 716, 724 (Ala. Civ. App. 1979). But, when "two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy." *Id*; *accord Ex parte Cintas Corp.*, 958 So. 2d 330, 333 (Ala. 2006).

5

Here, Blue Cross and GRMC expressly stated that no provision in the contract was intended to confer a benefit on a third party. Ms. Brown and Mr. Grindstaff cite to a plethora of authority. But none of the cases establish that a person can be a third-party beneficiary under Alabama law *despite explicit language in the contract stating otherwise*. Rather, the authority cited merely establishes other immaterial principles. *See, e.g., Ex parte Blue Cross & Blue Shield of Ala.*, 773 So. 2d 475 (Ala. 2000) (holding "that a medical insurer's explaining a claim denial to its insured cannot constitute a tortious interference in the contractual relations between the insured and his or her medical provider"); *Harris v. Board of Water & Sewer Comm'rs*, 320 So. 2d 624 (Ala. 1975) (public contract that did not expressly disclaim third-party beneficiaries); *Holley v. St. Paul Fire & Marine Ins. Co*. 396 So. 2d 75 (Ala. 1981) (no disclaimer of third-party beneficiaries); *Davidson v. Marshall DeKalb Elec. Co-op*, 485 So. 2d 1058 (Ala. 1986) (same); *West v. Shelby C'nty Healthcare Corp*., 459 S.W. 3d 33, 45 (Tenn. 2014) (applying Tennessee law). The Plaintiffs have not provided the court any reason not to apply black letter Alabama law on this matter and enforce the contract as drafted to exclude them as third party beneficiaries.

The court understands the Plaintiffs' argument that for them to receive the benefit of their contracts with Blue Cross, GRMC needs to honor its provider agreement with Blue Cross. But the Plaintiffs have not provided the court with any authority holding that argument sufficient to override the express language of the contract. Accordingly, the court must follow Alabama law's directive and "effectuate the expressed intent" of the agreement "by denying the third party any direct remedy." *Fed. Mogul Corp.*, 376 So. 2d at 724. The court finds that the Plaintiffs are not third party beneficiaries of GRMC's contract with Blue Cross, and therefore, lack standing to sue on the contract. The court will dismiss count one of the complaint without prejudice because it lacks subject matter jurisdiction over it.

2.  *Breach of Implied Contract*

In count three of the complaint, the Plaintiffs allege that the Defendants breached an implied contract between GRMC and Blue Cross. However, under Alabama law "the existence of an express contract generally excludes an implied agreement relative to the same subject matter." *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989); *see also Kennedy v. Polar–BEK & Baker Wildwood Partnership*, 682 So. 2d 443, 447 (Ala. 1996) ("This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."). Plaintiffs are permitted to plead alternative theories in the complaint, but may not proceed on an implied contract theory where the existence of an express contract concerning the relevant subject matter is undisputed. *See Selman v. CitiMortgage, Inc.*, No. 12-0441-WS-B, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013).

The Plaintiffs have pleaded both an express and implied contract concerning the same subject matter—GRMC's obligation to submit Blue Cross members' bills to the insurer for reimbursement. The existence of the express contract is not in dispute; the Plaintiffs attached the contract to the complaint. Therefore, the court will dismiss count three for failure to state a claim.

**B.  Conversion**

Ms. Brown and Mr. Grindstaff also complain the Defendants "wrongfully exercised dominion over [their] personal property" by "refusing to submit [their] hospital bills to their health insurance carriers" and, therefore, converted their property. (Compl. at ¶ 72). To state a claim for conversion under Alabama Law, the complaint must allege facts that, if proven, show a

"wrongful taking or wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Greene County Bd. of Education v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991). The plaintiff must identify "specific personal property" that the defendant converted. *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994).

Despite the Plaintiffs' claims to the contrary, the fact they allege they "unquestionably have lost money" is not "a sufficient basis to support the conversion claims." (Doc. 21 at 48). Rather, the Plaintiffs must show an ownership interest in specific personal property. Plaintiffs claim the "Defendants have interfered with, detained, and illegally used their personal property, including a charge imposed on a debt, a right of action arising from an automobile accident, and out-of-pocket expenses incurred because of the hospital lien imposed by GRMC." *Id*. Because these identified assets are not specified personal property capable of being converted, the court will dismiss the Plaintiffs' conversion claim.

First, the Plaintiffs argue that the Defendants' "charge imposed on a debt" constituted conversion. Ms. Brown alleges that a $565 debt owed to GRMC was reported to at least one credit reporting agency and that the hospital is attempting to collect the debt. The debt itself cannot give rise to a conversion claim. Presumably, Ms. Brown's theory is that the Defendants interfered with her right to possession of money. But, an action for conversion for money will only lie where an obligation to keep the money intact exists and the specific funds are capable of identification. *See Lewis v. Fowler*, 479 So. 2d 725, 726 (Ala. 1985). Here, GRMC has not taken possession of any of Ms. Brown's specific money and, therefore, cannot be said to have any obligation to keep the funds intact. Therefore, the assertion of a debt does not support an action for conversion.

Reporting the debt will not suffice as conversion either. *See Scott Paper Co. v. Novay Cherry Barge Serv., Inc.,* 265 So. 2d 150, 153 (Ala. Civ. App. 1972) (explaining that "interference" is accomplished through "wrongful detainment"). GRMC did not "wrongfully detain" Ms. Brown's credit score or report, and so cannot be said to have converted it. Therefore, neither the debt nor reporting it can support a conversion claim against GRMC.

Second, both Ms. Brown and Mr. Grindstaff claim GRMC converted their rights to actions against the tortfeasors in their car accidents by levying hospital liens that prevented them from obtaining favorable settlements. Again, GRMC could not have converted prospective causes of action or settlements because the Plaintiffs did not have a right to possession of the settlements. GRMC has not "detained" the settlements. *See Scott Paper Co.*, 265 So. 2d at 153. The contingent nature of a prospective cause of action or settlement means the Plaintiffs do not have a sufficient ownership interest to support a conversion claim.

Third, Ms. Brown and Mr. Grindstaff claim GMRC converted their auto insurance policy med-pay benefits by placing a hospital lien on the funds. Because of the lien, the insurer was required to issue the check for the benefits in the name of both GRMC and the insured. Ms. Brown and Mr. Grindstaff claim the lien prevented them from using the funds because both their and GRMC's signatures are needed to cash the checks. As a result, Ms. Brown and Mr. Grindstaff allege they have had to pay some medical costs out of pocket.

Citing the "closely analogous circumstances," the Plaintiffs place great weight on *Coffee Gen. Hosp v. Henderson*, 338 So. 2d 1022 (Ala. Civ. App. 1976). In *Coffee*, the plaintiff's insurance policy "provided for payment of a specific sum for each day of hospitalization of the insured." *Id*. at 1024. This sum was directly payable to the plaintiff; the plaintiff never assigned the benefits to the hospital. Despite that fact, the hospital submitted the policy and the plaintiff's

9

wife's signature on a blank form to the insurer and directly obtained payment from the insurer. Because the hospital had taken control over an asset that the Plaintiff had an immediate right to possess, the hospital had converted the funds. The Plaintiffs claim GRMC has acted similarly to the hospital in *Coffee* because it "schemed to obtain payment from a source other than the patient's health insurance policy to which it was legally obligated to look for payment." (Doc. 21 at 53).

However, *Coffee* is inapposite. In *Coffee*, the hospital sought payment from an insurance policy from which it had no right to receive direct payment, receiving funds to which the plaintiff had an immediate right of possession. Here, GRMC has not received *any* funds from med-pay benefits or a settlement, nor is it in possession of the check from the auto insurer. Simply put, GRMC lacks the necessary *control* over the med-pay benefits check to have converted it.

The conversion claim suffers from an additional defect. Notably, the complaint does not allege that Ms. Brown or Mr. Grindstaff demanded GRMC to endorse the checks so that they could cash them. Even if GRMC exercised sufficient control over the funds to implicate a conversion action, the Plaintiffs would need to make a demand on GRMC to be able to state a cause of action. In the absence of a wrongful taking or assumption, demand and refusal are necessary elements of a conversion action under Alabama law. *See Smith v. Cahill*, 182 So. 3d 557, 564 (Ala. Civ. App. 2014). GRMC asserted the lien in compliance with state law, and the auto insurer was legally required to address the check to both GRMC and the Plaintiffs. Any hypothetical possession GRMC may have gained of the check was not wrongful, and so GRMC would be required to refuse the Plaintiffs' demand for possession before being liable for conversion.

Because the Plaintiffs have not identified property capable of conversion in the complaint, the court will dismiss the conversion claim.

### C. Breach of Fiduciary Duty[3]

Breach of fiduciary duty is the Plaintiff's final claim. Ms. Brown and Mr. Grindstaff allege that GRMC had a duty by virtue of its special relationship with them to only file claims against their health insurance policy. The court notes that the Plaintiffs have not provided any case law establishing that such a duty exists. Even if the court assumes that the duty exists, the undisputed facts show that GRMC did not breach any duty owed to either Ms. Brown or Mr. Grindstaff.

GRMC produced an affidavit from a person testifying that it did not receive Ms. Brown's health insurance information when she was admitted to the hospital following her accident. Ms. Brown testified that she cannot remember if she provided her health insurance information. The existence of an alleged fiduciary duty to bill a patient's insurance must be conditioned on knowledge that the patient had insurance with a specific company. A hospital cannot have a duty to bill insurance it does not know exists. *See DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 461 (Ala. 2008) (listing foreseeability of harm as a consideration in determining whether a duty exists).

As to Mr. Grindstaff, the undisputed facts show that GRMC submitted a claim against Mr. Grindstaff's Blue Cross policy, and that Blue Cross paid the claim. Therefore, even if a duty existed, GRMC did not breach it.

Because the Plaintiffs have not shown a genuine issue of material fact as to whether

---

[3] The Plaintiffs voluntarily dismissed the breach of fiduciary count as to Defendants PASI, Triad Alabama, Triad Holdings, but not as to GRMC. *See* (Doc. 21 at 56).

GRMC breached the alleged fiduciary duty, and even if a breach occurred, no damage is attributable to GRMC's conduct, the court will enter judgment for GRMC on the fiduciary duty claim.

## IV. CONCLUSION

The court will dismiss the breach of express contract claim (count one) for lack of subject matter jurisdiction without prejudice; dismiss the conversion claim (count two) with prejudice; dismiss the breach of implied contract claim (count three) with prejudice; and will enter judgment for GRMC on the breach of fiduciary duty claim (count four). The court will enter a separate order consistent with this opinion.

**DONE** this 18th day of September, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE